# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL MURAWSKI,<br>   Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>   Defendant. | Civil Action No. 10-1477<br>Electronically Filed |

## MEMORANDUM OPINION

**I. Introduction**

Plaintiff, Michael Murawski ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the "Act"), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"). The parties have submitted cross motions for summary judgment on the record developed at the administrative proceedings. For the following reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 9) will be denied. The Commissioner's Motion for Summary Judgment (Doc. No. 7) will be granted and the administrative decision of the Commissioner will be affirmed.

**II. Procedural History**

Murawski protectively filed for disability benefits on March 12, 2008, alleging disability as of December 15, 2005. R. 102-05. The applications were denied by the state agency on June 30, 2008. R. 60-61. Murawski responded on June 24, 2008, by filing a timely request for an administrative hearing. R. 76. On September 22, 2009, an administrative hearing was held in

Morgantown, West Virginia, before Administrative Law Judge ("ALJ") George Mills. R. 20-59. Murawski, who was represented by counsel, appeared and testified. R. 25-53. James Ganoe, an impartial vocational expert ("VE"), also testified. R. 53-58.

In a decision dated November 5, 2009, the ALJ determined that Murawski was not "disabled" within the meaning of the Act. R. 8-16. The Appeals Council denied Murawski's request for review on September 11, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. 1-3.

Murawski commenced the present action on November 4, 2010, seeking judicial review of the Commissioner's decision. Doc. No. 1. Murawski and the Commissioner filed cross-motions for summary judgment on March 21, 2011. Doc. Nos. 7 & 9. These motions are the subject of this memorandum opinion.

### III. Statement of the Case

In his decision, the ALJ made the following findings:

1. The claimant met the insured status requirements of the Act through December 31, 2009.
2. The claimant had not engaged in substantial gainful activity since December 15, 2009, the alleged onset date. 20 C.F.R. § 404.1571 et seq. and 416.971 et seq.
3. The claimant had the following severe impairments: Crohn's disease; status post left cubital tunnel release; status post right carpal tunnel syndrome release; renal cysts; major depressive disorder; borderline personality disorder; and alcohol abuse. 20 C.F.R. §§ 404.1520(c) and 416.920(c).
4. The claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. §§404.1567(b) and 416.967(b); ability to change positions from sitting to standing for 10 minutes every hour; occasional postural movement except not climbing ladders, roper, or scaffolds; no overhead reaching with his left upper extremity; avoid temperature extremes, vibrations, and workplace hazards; unskilled work; only occasional contact with supervisors, co-workers and the general public; and no rapid production work.

6. The claimant is unable to perform any past relevant work. (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant was born on May 27, 1971, and was 38 years old, which is defined as a younger individual. (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has limited education and is able to communicate in English. (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. (20 C.F.R. §§ 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2005, through the date of this decision. (20 C.F.R. § 404.1520(g) and 416.920(g)).

## IV. Standard of Review

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions, he or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).
>
> *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. It is on this standard that the Court has reviewed the parties' cross-motions for summary judgment.

**V.    Discussion**

In support of his Motion for Summary Judgment, Murawski argues that the ALJ committed two reversible errors. Doc. No. 10. Specifically, Murawski contends that: (1) the ALJ committed reversible error by failing to give his testimony full credibility and (2) erred by refusing to accept as binding "uncontradicted evidence from the treating sources and consultative examiner, Dr. Haddad. . . ." Id. The Commissioner counters that Murawski did not meet his burden of establishing disabling functional limitations and that the ALJ's decision is supported by substantial evidence. Doc. No. 8.

6

### A. The ALJ was not Required to Afford Murawski's Testimony Full Credibility

To be eligible for benefits, Murawski, as claimant, has the burden of establishing a medically determinable impairment that is so severe that it prevents him from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d) (2)(A); 20 C.F.R. §§ 404.1505, 416.905; *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983). In deciding whether a claimant has met this burden, the ALJ must consider all the evidence of record, including the claimant's testimony and if discredited, provide reasons for discounting such testimony. *See Akers v. Callahan*, 997 F.Supp. 648, 658 (W.D. Pa. 1998).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that supports a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir.2000). Although Murawski argues that the ALJ improperly relied on his daily activities of living to discount his testimony, the ALJ adequately supported his decision to discount Murawski's testimony by explaining that it was inconsistent with other medical evidence and Murawski's own previous complaints to medical professionals.

The ALJ did more than cite "sporadic and transitory" activities to support his decision that Plaintiff was not credible. Doc. No. 10, 5, citing *Fargnoli v. Massanari*, 237 F.3d 34, 40 (3d Cir. 2001). The ALJ cited to the following evidence from Murawski's medical record: (1) Dr. Stokes reported in his last treatment note that Murawski's medication for Crohn's disease, Robinul, had helped him greatly (which Murawski testified he still takes); (2) Murawski told a physician on May 19, 2009 that he was in "good general health" with "no recent weight change, fever or fatigue; (3) during psychiatric admission, Murawski had no reported difficulties with Crohn's disease; (4) no abnormal clinical findings on examination and Murawski denied any

diarrhea, constipation, or nausea; (5) Murawski's primary care physician Dr. Deatrich repeatedly found Murawski to be without significant abnormal clinical findings in physical examinations; and (6) Dr. Stokes noted that Murawski's most recent colonoscopy was normal. R. 11-13.

The ALJ also noted that although Murawski was initially diagnosed with Crohn's disease when he was fifteen, his recent results "ha[ve] remained stable and adequately controlled on medications when compliant. . . ." R. 11. As noted by the Commissioner, a condition that previously did not impair a claimant's ability to work is not disabling absent evidence of deterioration. *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991).

It is clear from the ALJ's decision that he reviewed Murawski's entire record and although there is some evidence of Plaintiff's Crohn's disease, including Dr. Stokes' notation of Murawski's complaints of Crohn's symptoms, because the ALJ adequately explained his reasons for doing so, he was free to choice determine credibility so long as this decision was consistent with the entire record. *See Cotter*, 642 F.2d at 705. The ALJ determined that Murawski did have some limitations from Crohn's disease, but accounted for such limitations in his light functional capacity. R. 12. Murawski has not identified medical evidence which the ALJ did not consider in making this determination. In sum, substantial evidence supports the ALJ's decision to discredit Murawski's subjective complaints.

### B. *Dr. Haddad's Opinion Was Not Entitled to Binding or Controlling Weight*

Murawski also contends that the ALJ erred by "disregard[ing] Dr. Carosso's medical assessment of plaintiff's ability to perform work-related abilities." Doc. No. 10, 8. According to Murawski, the ALJ improperly credited the opinion of the examining psychologist over Dr. Carosso's opinion, a doctor who had "spent time with, spoke with, and examined [him]." Id. at 9. Although Dr. Carosso opined through his check-list of functional limitations that Murawski

had marked impairments in many work-related functions, this opinion was not binding on the ALJ.

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(d)(2). *See* SSR 96-2 ("A statement by a physician or other treating source can be given weight only to the extent it is supported by medical findings."). Murawski contends that "had ALJ Mills given appropriate weight to the findings of Dr. Carosso, the doctor who actually examined [him], a finding of "disabled" is warranted." Doc. No. 10, 9. However, as noted, Dr. Carosso's opinion was not automatically entitled to controlling or binding weight. 20 C.F.R. § 404.1527(d)(2). The ALJ discussed Dr. Carosso's opinion, as required, but chose to afford such opinion little or no weight because he concluded that it is "without objective support in the longitudinal medical evidence of record that ha[d] rarely noted any significant mental health problems, except in June 2008, during a period of severe alcohol abuse."[1] R. 12.

The ALJ also supported his decision not to afford Dr. Carosso's opinion great weight by citing other medical evidence including: (1) essentially normal clinical signs in the longitudinal treatment records from his primary care treatment providers; (2) treatment for mental health issues was only provided by his primary care providers; (3) relatively benign objective clinical signs and normal Mini Mental Status Exam score of 28 out of 30, reported by "onetime consultative evaluation" by Dr. Carosso; and (4) a singule episode of decompensation "due solely to his alcohol abuse" which "quickly resolved once he became sober and was started on

---

[1] Despite finding Dr. Carosso's opinion to be of little weight, the ALJ included some of Murawski's perceived mental functional limitations by limiting Murawski to only occasional contact with supervisors, co-workers, and the general public, and limiting him to work which does not involve rapid-production work. R. 12.

medications." ² R. 12. In light of the generally unremarkable evidence of psychological limitations, the ALJ afforded great weight to the mental residual functional capacity assessment completed by reviewing psychologist Michelle Santilli, Psy.D. R. 14. The ALJ thoroughly discussed that he found Dr. Santilli's opinion, that Murawski was only partially credible and dismissing Dr. Carosso's conclusions, to be "fully supported by and consistent with the longitudinal medical evidence of record and [] given by a mental health specialist who has an understanding of the disability programs and their evidentiary requirements." ³ Id.

In sum, the ALJ did not ignore any medical evidence of record or chose to discredit consistent medical opinions without citing to contrary medical opinion. Indeed, the Court finds that the ALJ's decision is thoroughly explained and supported by substantial evidence. As such, the ALJ's decision will be affirmed.

---

² This is consistent with 20 C.F.R. § 404.1527(d)(1-6) which provides that :

Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors.

20 C.F.R. § 404.1527(d)(1- 6).

³ Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527(f)(2)(I). *See also* SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.")

**VI.	Conclusion**

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence.  Therefore, the Commissioner's administrative decision will be affirmed.  An appropriate order follows.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:	All Registered ECF Counsel and Parties